T. Jason Wood, Esq., ISB No. 5016
WOOD LAW GROUP, PC
1906 Jennie Lee Dr.
Idaho Falls, ID  83404
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net

Attorneys for Plaintiffs

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON WOOD, ALICIA WOOD, and WILDWOOD RANCH, LLC, | Case No. 1:18-cv-168 |
| Plaintiffs, | |
| v. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| ELAM & BURKE, PROFESSIONAL ASSOCIATION, | |
| Defendant. | |

Plaintiffs Jason and Alicia Wood (husband and wife), and Wildwood Ranch, LLC, for cause

of action against the above-named defendant, alleges as follows:

**I.**

**JURISDICTION, VENUE, AND PARTIES**

1.      This case arises under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A.

§ 1692, *et seq.*

2.      This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C.A. § 1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

3.      WildWood Ranch, LLC, is an Idaho Limited Liability Company owned by its members, T. Jason Wood and K. Alicia Wood, husband and wife (hereinafter collectively "the Woods"). At all material times the Woods are and were persons, individuals, and consumers within the meaning of the FDCPA.

4.      Defendant Elam & Burke, Professional Association (hereinafter "Elam & Burke"), is, and at all material times was, a professional association organized pursuant to the laws of the State of Idaho, with its principal place of business in the City of Boise, County of Ada, State of Idaho, and a debt collector within the meaning of the FDCPA.

5.      Matthew L. Walters is, and at all material times was, a duly licensed attorney, owner, shareholder, employee, agent and representative of Elam & Burke, acting in his individual capacity and in the course and scope of his employment with and agency for Elam & Burke.

6.      Venue is proper in the *Southern Division* (Boise) of the District of Idaho under 28 U.S.C. § 1391(b)(1), because that is the judicial district and division in which Elam & Burke resides.

## II.

## BACKGROUND AND FACTUAL ALLEGATIONS

7.      WildWood is the owner of Lot 2 (hereinafter "the Ranch") of a residential/recreational property development consisting of six (6) lots each situated on the north bank of the Fall River in Fremont County, Idaho, called "The Reserve on Fall River" (hereinafter the "Reserve").

8.     The Reserve was developed in 2005-2006 as an exclusive residential development for expensive vacation or recreational homes to be constructed and used in harmony with the wild, riparian natural environment as well as with the agricultural heritage and history of the area.

9.     As a part of the development, the developers imposed upon each Lot therein certain Covenants, Conditions and Restrictions ("CC&Rs"), and formed a home owner's association called the Reserve on Falls River Home Owner's Association, Inc. ("HOA") to enforce the CC&Rs and regulate the use of the properties in the Reserve.

10.     The HOA and CC&Rs were and are unusual in the breadth and extent of the power, control and regulation they purport to retain of the lot owner's use of their own property, as well as in the ambiguities arising from the many conflicting provisions in the CC&Rs, the purpose and/or effect of which to give the Munsons the ability to interpret the CC&Rs to mean whatever they wanted.

11.     The developers of the Reserve, Drake and Lora Munson ("Munsons"), husband and wife, retained 2 lots within the Reserve and retain them to the present day, in order to maintain control of the HOA and the manner and extent of other Reserve lot owners' use of their properties.

12.     The other lot owners were original investors in the development and pledged their complete support and their HOA votes to the Munsons, each lot owner having invested $450,000 in the Munsons and their development.

13.     The investors intended to resell their undeveloped lots for profit, not to build or reside on the property themselves.  In fact, from the time of their acquisition of their respective lots until the present, neither they nor the Munsons have but rarely ever placed a foot on them much less built

anything on them. The HOA is therefore an association of investors in bare ground not of home owners.

14.     When the nationwide real estate crash/bubble burst of 2008 hit the Reserve, the land was still largely undeveloped, without no structures having been built thereon, and no one had purchased any of the lots. With the crash, the value of the original investors' interest in the Reserve dropped to a small fraction of their original investment, much to their dismay and distress. Given the slow pace of economic recovery, years went by with the land undeveloped and unimproved, the individual investors absent and living out-of-state, and the entire development falling into disrepair.

15.     Wildwood acquired the Ranch from the Woods, who purchased it in June 6, 2016 for their dream home, at a cost of less than a third of what the Munsons or any of their investors/lot owners invested in their own lots. It was tremendously disturbing to them, that what they envisioned as an extremely highbrow, exclusive, gated recreational community could be invaded by riffraff like the Woods who until now were priced out of membership.

16.     Adding salt to the wounds of the Munsons and their minions, the Woods had acquired the best lot in the Reserve. The Reserve is located on a remote, partially wooded stretch of the Fall River. The Fall River is a wild, freestone tributary of the Henry's Fork of the Snake River, originating in the southwest corner of Yellowstone Park, just a few miles east of the Ranch. The Ranch is by far the best and most valuable lot in the Reserve. Lot 3 through 6 of the Reserve are located on what was until recently farm ground – a treeless bluff several hundred feet above and overlooking the Fall River but with unobstructed views of the Teton Mountain Range. Lot 1 is located entirely in the river bottom with no views of the Tetons, and it is burdened by a road that allows access to Lot 2 (the "Ranch"). Unlike all the other lots, the Ranch possesses the best of the

other 5 lots.  Namely, roughly half of it is situated in the river bottom with mature cottonwood trees, quaking aspens, with 600 feet of river frontage, which is used as a corridor for abundant and diverse wildlife migration, while the other half is are located on the bluff above, with unobstructed views of the Tetons and the ability to build on either or both.  The Ranch also is the only lot unburdened by an access road – the access road to the Ranch (which approaches from upriver) dead-ends at the nearest Ranch boundary and there are no means of entry to the Ranch from down river because the river meets a cliff face just beyond the down river border, cutting off any approach from that direction and granting the Woods almost complete solitude and seclusion.  These features are unique not only to any other properties on the Fall River, they are rare for available properties in the entire Henry's Fork drainage.

17.     During its entire existence the HOA, with the complete allegiance of the other investors/owners in the Reserve, the Munsons ran the HOA and the Reserve as their own personal dictatorship, violating the HOA bylaws and CC&Rs whenever it benefitted them, while insisting upon strict compliance by the Woods not only to the HOA bylaws and CC&Rs but also to the Munsons' whims which were not embodied in any HOA bylaw or CC&R.  They did this knowing that even in the unlikely event of a legal challenge and even more unlikely event the HOA did not prevail, the could still recover their attorney fees and litigation costs from the Woods and other members through the imposition of HOA dues which could be recovered involuntarily by non-judicial lien and foreclosure.  Indeed, at one point the Munsons threatened to bar the Wood from access to their property altogether if the Woods did not bow to the Munsons' whims.  In sum, even if the Woods prevailed on a legal challenge to the arbitrariness and caprice of the Munsons and the HOA, the Woods still lose.

18.     Although not a single home or building has ever been constructed in the Reserve, the Munsons conceded in various email communications that their purpose in oppressing the Woods was basically to force the Woods to either single-handedly rescue them from their financial losses in the real estate crash of 2008 by compelling the Woods to build and maintain a Taj Mahal of the West that would drive up their property values, or, failing that, to force the Woods out of the Reserve.

19.     With little time left before a meeting was to be held to amend the CC&Rs and bylaws to make it easier for the Munsons to accomplish their oppressive purposes, on July 21, 2017 the Woods quickly filed a lawsuit against the HOA, the Munsons and other lot owners, seeking preliminary and permanent injunctive relief against the proposed amendments, as well as for damages.

20.     Unfortunately the Woods were unable to prepare and present a motion for temporary restraining order and preliminary injunction in time to prevent the proposed amendments to the bylaws and CC&Rs from being enacted.

21.     The urgency in prosecuting the complaint having passed, the Woods took no further action.  They did not submit to the Court any proposed Summonses and did not serve process on the defendants, primarily because, as set forth above, in all likelihood even if they won they would lose. Consequently, none of the defendants in that lawsuit were ever served process.

22.     Nevertheless, on December 13, 2017, on behalf of the HOA and Munsons, Matthew Walters (acting for defendant Elam & Burke) sent an email to the Woods demanding payment of Reserve HOA dues, alleged to be due and owing in the amount of $4,167.00 and assessed to cover attorney fees the HOA allegedly incurred in excess of $19,000 to defend the Woods' lawsuit that had never been served on and in which none of the defendants had entered an appearance.

23.     Walters further threatened the Woods that if they did not pay the $4,167.00 within 30 days, pursuant to Article 5 of the CC&R's the Woods would be assessed "a late fee of 10% which shall continue to accrue every 30 days thereafter, and failure to pay such amounts within 60 days from the due date shall result in 2 late fees being assessed and a lien being placed on the lot.

24.     Mr. Wood immediately disputed the debt and requested verification thereof, specifically demanding the attorney fees invoices supporting the claimed debt.  The Woods made this demand because they had reason to doubt the validity and amount of the absurdly huge attorney fees sum in light of the fact that the complaint had never been served, the defendants had not appeared, and the HOA's and Munsons' history of malice, oppression, and retaliation against the Woods.

25.     Walters repeatedly refused Mr. Wood's verification request and continued in his attempts to collect the alleged debt, despite being advised of his statutory duties under the FDCPA.

26.     In his dunning email referenced above, and in subsequent communications, Walters (on behalf of Elam & Burke) committed the following violations of the FDCPA:

a.     He failed to give notice to the Woods:

i.     That they had thirty (30) days to dispute the validity of the debt,

ii.     That he would obtain verification of the debt, if the Woods made a dispute in writing within such 30-day period, or

iii.     That he was attempting to collect a debt and that any information obtained may be used for such purpose;

b.     He gave the Woods only 30 days to pay the debt after which a 10% late fee would be assessed;

     c.     He gave the Woods only 60 days to pay the debt after which 2 late fees would be assessed and a lien placed on the Woods' property.

     d.     He failed, and indeed expressly refused, to provide the requested invoices or even provide the most basic verification of the alleged debt;

     e.     He continued to communicate with the Woods in an attempt to collect the debt, after having been advised that they disputed the debt and would not pay it without the requested validation;

     f.     He implied that nonpayment may result in seizure of the Woods' property in the Reserve, by stating that the creditor would place a lien on it;

     g.     He impliedly threatened to take non-judicial action to repossess the Woods' property, by stating that the creditor would place a lien on it, without the present right to do so;

     h.     Falsely represented:

          i.     The character, amount, or legal status of the alleged debt; and

          ii.     He could lawfully receive compensation as the debt collector;

     i.     Implied that nonpayment of the alleged debt might result in the seizure, attachment, or sale of the Woods property; and

     j.     Threatened to take action that he knew legally could not be taken.

27.     In committing the foregoing acts and omissions, Elam & Burke conspired and acted in concert with the HOA, the Munsons and its other members punish the Woods, harass them into submission, and either acquire the Woods' lot by manufacturing a lien upon which they would

foreclose or force the Woods to sell the property to someone of sufficiently high class or more malleable to their will, by deliberately or falsely incurring unnecessary and excessive attorney fees and litigation costs in defense of a lawsuit that had never been served on the HOA, charging those fees and costs to the Woods as HOA "dues," and attempting to collect them.

28.     Elam & Burke continued to act in accordance with this purpose in again manufacturing HOA dues to charge the Woods based upon dubious unnecessary attorney fees when, in January 2018, after expiration of the deadline for service of the complaint, Elam & Burke unnecessarily appeared (despite never having been served with the complaint) and filed a motion to dismiss, in concert with the other Reserve members.  Elam & Burke did so not on the grounds that the complaint was not timely served but on substantive grounds and only for a *partial* dismissal with prejudice.

29.     When the parties could not reach a settlement of the lawsuit, the Woods voluntarily dismissed the lawsuit by notice pursuant to Rule 41(a)(1)(A)(i), before the defendants filed an answer or motion for summary judgment.  Nevertheless, Walters repeatedly threatened to file a motion for award of attorney fees, knowing there was no basis in law or fact for such a motion or award of attorney fees, for the same improper, oppressive, unconscionable, and ulterior purposes as set forth above.

30.     Ultimately a settlement was reached.  Nevertheless, Walters, on behalf of Elam & Burke, continues to attempt to indirectly collect the foregoing debt for the same improper, oppressive, unconscionable, and ulterior purposes as set forth above.

## III.

## CAUSES OF ACTION

31.     Elam & Burke's actions as alleged above constituted false, deceptive, and/or misleading representations or means in connection with the collection of a debt, in violation of the FDCPA, 15 U.S.C.A. § 1692e.

32.     Elam & Burke's actions as alleged above constitute unfair or unconscionable means to collect or attempt to collect a debt, in violation of the FDCPA, 15 U.S.C.A. § 1692f.

33.     Elam & Burke failed to give the proper notices and validation in violation of the FDCPA, 15 U.S.C.A. §§ 1692e and 1692g.

34.     Elam & Burke willfully acted in the use of legal process not proper in the regular course of the proceeding for ulterior, improper purposes, as set forth above.

35.     The Woods are not required to characterize their legal theories stated by the facts alleged above, and in doing so they do not thereby assume such a duty and expressly hereby disclaim it.  They further reserve the right to identify any additional causes of action or claims for relief which are stated by the foregoing facts.

## IV.

## DAMAGES

36.     As a direct and proximate result of Elam & Burke's unlawful conduct alleged above, the Woods have incurred actual damages which include but are not limited to mental and emotional distress, suffering, and loss of enjoyment of life, and attorney fees they were forced to incur in responding to Elam & Burkes' FDCPA violations and abuses.

37.     As a direct and proximate result of Elam & Burke's unlawful conduct alleged above, the Woods are also entitled to an award of statutory damages for each discrete statutory violation in an amount not to exceed $1,000 each, pursuant to 15 U.S.C. § 1692k(a)(2)(A).

## V.

## ATTORNEY FEES

38.     The Woods are entitled to an award of their costs of this action and reasonable attorney fees incurred herein, pursuant to 15 U.S.C. § 1692k(a)(3).

## VI.

## JURY DEMAND

The Woods demand a trial by a jury comprised of the maximum number of jurors allowed by law.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the judgment of the Court against defendant as follows:

1.     For actual damages as described above in such amounts to be proven at trial;

2.     For statutory damages for each discrete violation, not to exceed $1,000 each;

3.     For an award of costs of suit and reasonable attorney fees they incur herein;

4.     For such further relief in the Woods' favor as the Court deems just.

DATED this 17th day of April, 2018.

WOOD LAW GROUP, PC

By:     /s/ _____
        T. Jason Wood, Esq.

W:\WLG\TJW\4190 WILDWOOD\PLEADINGS\001 Complaint.wpd

11 -    COMPLAINT AND DEMAND FOR JURY TRIAL